**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | |
| | § | |
| **SKYLINE EMS, INC.** | § | **Case No. 25-70188** |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | |
| | § | |
| | § | |

---

## SKYLINE EMS, INC., FOURTH AMENDED PLAN OF REORGANIZATION

---

DATED: APRIL 9, 2026

Antonio Martinez, Jr.
Texas State Bar No. 24007607
515 W. Nolana Ave. Suite B
McAllen, Texas 78504
(956) 789-5393 (phone)
Email: martinez.tony.jr@gmail.com
*Attorney for Skyline EMS, Inc.*

1

TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND USE OF TERMS ................................................................4
    1.01   Defined Terms ..................................................................................................4
    1.02   Interpretation; Application of Definitions and Rules of Construction.............................12

ARTICLE II: OVERVIEW OF PLAN ...............................................................................14
    2.01   Generally ..........................................................................................................14
    2.02   Exhibits.............................................................................................................14
    2.03   Modifications.....................................................................................................14

ARTICLE III: PROVISIONS APPLICABLE TO ALL CLAIMS ................................................14
    3.01   Treatment of Claims ...........................................................................................14
    3.02   Allowed Claims.................................................................................................14
    3.03   Amount of Claims .............................................................................................14
    3.04   Allowance of Post-Petition Interest, Fees, and Costs..................................................15
    3.05   Filing of Administrative Claims ...........................................................................15
    3.06   Filing of Requests for Post-Petition Fees or Costs. ...................................................15
    3.07   Objections to Claims .........................................................................................15
    3.08   Distributions Generally.......................................................................................15
    3.09   Distributions on Contested Claims.........................................................................15
    3.10   Undeliverable Distributions ................................................................................ 16

ARTICLE IV: UNCLASSIFIED CLAIMS ......................................................................... 16
    4.01   Administrative Expense Claims ........................................................................... 16
    4.02   Professional Fee Claims ..................................................................................... 17
    4.03   Other Priority Claims ........................................................................................18

ARTICLE V: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....... 18
    5.01   Class 1 – Secured  Tax Claims ............................................................................. 18
    5.02   Class 2 – Priority Tax Claims............................................................................... 18
    5.03   Class 3 – General Unsecured Claims....................................................................... 19
    5.04   Class 4 – I.R.S Non-Priority Unsecured  Claims........................................................ 20
    5.05   Class 5 – **Litigation Class- Sarai Cabello** ...........................................................21
    5.06   Class 6 – Equity Interests ...................................................................................21

ARTICLE VI: IMPLEMENTATION OF THE PLAN...........................................................21
    6.01   In General ........................................................................................................21
    6.02   Implementation of the Plan and Sources of Funds for the Plan .....................................21
    6.03   Compromise and Settlement of Claims, Interests and Controversies........................... 23
    6.04   Authorization ................................................................................................... 24

ARTICLE VII: EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................... 24
    7.01   Assumption or Rejection of Executory Contracts and Unexpired Leases...................... 24
    7.02   Claims for Rejected Executory Contracts and Unexpired Leases ................................. 26

ARTICLE VIII: CAUSES OF ACTION....................................................................... 26
    8.01   Potential Litigation ......................................................................................... 26
    8.02   Preserved Litigation........................................................................................ 27

ARTICLE IX: EFFECT OF CONFIRMATION.......................................................... 30
    9.01   Vesting of Property.......................................................................................... 30
    9.02   Plan Binding .................................................................................................... 30
    9.03   Reliance on Other Parties ............................................................................... 31
    9.04   Discharge......................................................................................................... 31
    9.05   Permanent Injunction...................................................................................... 31

ARTICLE X: MODIFICATION OF THE PLAN ....................................................... 31
    10.01  Amendment or Modification of the Plan......................................................... 31
    10.02  Deemed Acceptance or Rejection.................................................................... 32

ARTICLE XI: POST CONFIRMATION MATTERS.................................................. 32
    11.01  Application for Final Decree ........................................................................... 32
    11.02  U.S. Trustee .................................................................................................... 32

ARTICLE XII: DEFAULT ......................................................................................... 33
    12.01  Default by Debtor, Reorganized Debtor.......................................................... 33
    12.02  Conversion to Chapter 7.................................................................................. 34

ARTICLE XIII: RETENTION OF JURISDICTION................................................... 34
    13.01  Jurisdiction over Matters ................................................................................ 34

ARTICLE XIV: MISCELLANEOUS.......................................................................... 35
    14.01  Request for Relief under 11 U.S.C. § 1129(b) - "Cramdown"....................... 35
    14.02  Entire Agreement............................................................................................. 35
    14.03  Payments ......................................................................................................... 35
    14.04  Governing Law ............................................................................................... 36
    14.05  Non-Severability of Plan Provisions .............................................................. 36
    14.06  Consent to Jurisdiction ................................................................................... 36

SKYLINE EMS, INC.'S PLAN OF REORGANIZATION

Skyline EMS, Inc. (the "**Debtor**"), as debtor in possession in the above-referenced bankruptcy case pursuant to Chapter 11, Title 11, United States Code, proposes the following Plan of Reorganization dated April 9, 2026, including as it may later be amended, filed following court approval of  Skyline EMS, Inc.'s *Second Amended Disclosure Statement Under 11 U.S.C. § 1125* (the "**Disclosure Statement**") which contains important disclosure information regarding the Plan. The amendments in this plan and exhibits include documenting of  $20,000 in additional income and $5,000 in additional expenses per month..

ARTICLE I: DEFINITIONS AND USE OF TERMS

1.01    Defined Terms. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a)    **Administrative Expense Claim** means any right to payment from the Debtor that constitutes a cost or expense of administration incurred during the Chapter 11 Case of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate or continuing the operations of the Debtor incurred during the period from the Petition Date to the Effective Date; (b) Professional Fee Claims; or (c) Quarterly Fees.

(b)    **Administrative Expense Payment Arrangement** has the meaning ascribed to such term in Section 4.01.

(c)    **Affiliate** means, with respect to any Entity, all Entities that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code if such Entity was a debtor in a case under the Bankruptcy Code.

(d)    **Allowed** means

a.    with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary cost or expense of preserving the Estate or continuing the operations of the Debtor incurred during the period from the Petition Date to the Effective Date for which a request for payment is filed, (A) to the extent such Claim is determined by the Debtor to constitute an Administrative Expense Claim or allowed by a Final Order of the Bankruptcy Court or (B) as to which no objection to allowance has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; (ii) other than with respect to a Professional Fee Claim, a Claim that arises during the period from the Petition Date to the Effective Date for which a request for payment is filed that is Disputed by the Debtor, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy

4

Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; (iii) a Claim that arises during the period from the Petition Date to the Effective Date in the ordinary course of the Debtor's operations that is determined by the Debtor to constitute an Administrative Expense Claim; (iv) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court; or (v) any Claim that is expressly allowed under the Plan.

b.  with respect to any Priority Tax Claim, Other Priority Claim, Other Secured Claim, General Unsecured Claim, or any portion of any of the foregoing, a Claim that is: (i) listed in the Schedules as not being disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date, not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of an objection, (A) which objection was filed on or before the Claims Objection Deadline and (B) which Claim has not been settled, waived, withdrawn or Disallowed pursuant to a Final Order; or (iv) expressly Allowed (x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtor or Reorganized Debtor, as applicable, or (z) pursuant to the terms of the Plan. For the avoidance of doubt, the holder of a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.

(e)  **Avoidance Action** means any and all actual or potential avoidance, recovery, subordination, or other similar Claims, causes of action, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, causes of action, or remedies arising under chapter 5 of the Bankruptcy Code, including claims brought pursuant to sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550, 553(b) and 724(a) of the Bankruptcy Code, or any analogous state, federal, or foreign statutes, common law, or other applicable law.

(f)  **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

(g)  **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, McAllen Division, or such other Court that may have jurisdiction with respect to Debtor's Chapter 11 Case.

(h)  **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Chapter 11 Case.

(i)  **Bar Date** means (a) November 3, 2024 for any Claim (other than an Administrative

5

Expense Claim or a Claim of a Governmental Unit), or (b) January 5, 2026 for any Claim of a Governmental Unit, in each case as established by the Bar Date Order.

(j)   **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(k)   **Cash** means legal tender of the United States of America.

(l)   **Cause of Action** means any action, claim, right, litigation, proceeding, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, recoupment, counterclaim, cross-claim, power, privilege, license, or franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, whether scheduled in the Schedules or not scheduled in the Schedules, whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law or in equity or under any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim, or recoupment; or any Claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any Claim under section 362 of the Bankruptcy Code; (d) any Avoidance Action; (e) any claim or defense, including fraud, mistake, duress, or usury, or any other defenses set forth in section 558 of the Bankruptcy Code; (f) any claim or right to the turnover of assets or relating to the unauthorized use of assets; or (g) any claim based on non-bankruptcy law, including any state-law fraudulent transfer or creditors' rights claim, breach of contract, all rights to enforce any contract, any form of estoppel, fraud, constructive fraud, abuse of process, malicious prosecution, defamation, libel, slander, conversion, trespass, intentional infliction of emotional distress or other harm, negligence, gross negligence, negligent misrepresentation, fraudulent misrepresentation, vicarious liability, respondent superior, breach of any duty owed under either applicable law or any contract, breach of any fiduciary duty or duty of loyalty or due care, aiding and/or abetting breach of fiduciary duty, aiding and/or abetting breach of duty of loyalty or due care, alter ego, veil piercing, self-dealing, usurpation of corporate opportunity, ultra vires, quantum merit, tortious interference, duress, unconscionability, undue influence, and unjust enrichment, as well as any cause of action for conspiracy to commit any unlawful act, aiding and/or abetting any such unlawful act, or assisting, encouraging, and/or participating in any such unlawful act.

(m)   **Chapter 11 Case** means the case filed by the Debtor under chapter 11 of the Bankruptcy Code pending as Case No. 25-70188 (EVR) in the Bankruptcy Court.

(n)   **Claim** has the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

(o)   **Claimant** means any Person or Entity having or asserting a Claim in the Chapter 11 Case.

6

(p)     **Claims Objection Deadline** means the deadline for filing an objection to any Administrative Expense Claim (other than a Professional Fee Claim), Priority Tax Claim, Other Priority Claim, Other Secured Claim, General Unsecured Claim, or Equity Interest, which deadline shall be thirty (30) days after the Confirmation Order is signed, subject to any extensions approved by an order of the Bankruptcy Court; provided, however, that the Debtor shall not be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar Date.

(q)     **Class or Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Article V of this Plan.

(r)     **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(s)     **Confirmation Date** means the date on which the Confirmation Order is entered.

(t)     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(u)     **Contested Claim** means a Claim against the Debtor or its property that is Disputed.

(v)     **Creditor** has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

(w)     **Cure Amount** means, with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed by the Debtor, the monetary amount, if any, required to cure the Debtor's defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease) at the time such Executory Contract or Unexpired Lease is assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

(x)     **Debtor** means Skyline EMS, Inc., which is the debtor in possession in the Chapter 11 Case.

(y)     **Disallowed** means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, General Unsecured Claim, or Equity Interest, any such Claim, Equity Interest or portion thereof that: (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established but no Proof of Claim has been timely filed, such that the creditor holding such Claim shall not be treated as a creditor with respect to such claim for the purposes

7

of voting and distribution.

**(z)**     **Disclosure Statement** means the disclosure statement for the Plan, including any exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

(aa)     **Disputed** means, as to any Administrative Expense Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, General Unsecured Claim, or Equity Interest, any such Claim or Equity Interest (or portion thereof) (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules as "disputed," "contingent," or "unliquidated," (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim prior to the Claims Objection Deadline, which objection has not been withdrawn or adjudicated pursuant to a Final Order, or (d) is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(bb)     **Distribution** means the payment or delivery of Cash, property, or interests in property, as applicable, to holders of Allowed Claims under the terms of the Plan.

(cc)     **Effective Date** means the first Business Day after the date on which (a) all of the conditions precedent to the occurrence of the Effective Date set forth in the Plan and Confirmation Order.

(dd)     **Entity** has the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

(ee)     **Equity Interest** means any "equity security" as defined in section 101(16) of the Bankruptcy Code, including any partnership interest constituting an ownership interest in the Debtor.

(ff)     **Estate** means the estate created for the Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

(gg)     **Exculpated Party** shall mean each of, and in each case, in its capacity as such, (a) the Debtor, (b) the Unsecured creditors, a n d (c) with respect to each of the foregoing, each such Entity's financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

(hh)     **Executory Contract** means any executory contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

(ii)     **Final Order** means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or

amended, and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order to not be a Final Order.

(jj)  **General Unsecured Claim** means any Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, or a Secured Claim.

(kk)  **Governmental Unit** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

(ll)  **GUC Cash Pool** means Cash in an amount equal to $_____, which shall be deposited into the GUC Distribution Reserve as follows, in each case for Pro Rata Distribution to holders of Allowed General Unsecured Claims and the Internal Revenue Service's unsecured non-priority tax claim.

(mm) **GUC Distribution Trigger Date** has the meaning ascribed to such term in Section 6.02.

(nn)  **Impaired** means "impaired" within the meaning of section 1124 of the Bankruptcy Code.

(oo)  **Insider** means an insider of the Debtor as defined in section 101(31) of the Bankruptcy Code or a non-statutory insider of the Debtor.

(pp)  **Lien** has the meaning ascribed to such term in section 101(37) of the Bankruptcy Code.

(qq)  **Minimum Excess Average Liquidity Evidence** has the meaning ascribed to such term in Section 6.02

(rr)  **Other Priority Claim** means any Claim against the Debtor that is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or a Priority Tax Claim.

(ss)  **Other Secured Claim** means any Secured Claim against the Debtor other than the secured claim of the Internal Revenue Service.

(tt)    **Payors** means the Debtor, as specified in Section 6.02.

(uu)    **Person** has the meaning ascribed to such term in section 101(41) of the Bankruptcy Code.

(vv)    **Petition Date** means July 7, 2025.

(ww)    **Plan** means this Plan of Reorganization dated April 9, 2026, including all exhibits, schedules, or appendices hereto and all documents and information contained in the Plan Supplement.

(xx)    **Plan Supplement** means the compilation of documents and form of documents, agreements, schedules, and exhibits to the Plan, which shall be filed no later than seven (7) calendar days prior to the deadline to object to confirmation of the Plan, and which shall include (i) **Exhibit F** to the Plan, and (ii) any amended documents or forms of amended documents appended to the Plan, in each case as such documents may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code.

(yy)    **Post-Emergence Monthly Payments** has the meaning ascribed to such term in Section 6.02.

(zz)    **Priority Tax Claim** means any Claim of a Governmental Unit against the Debtor that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, including such claims that are alleged to the Secured Claims.

(aaa)    **Pro Rata** means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class (or in a group of Administrative Expense Claims, including Professional Fee Claims) bears to the aggregate amount of all Claims (including Contested Claims) in such Class (or in a group of Administrative Expense Claims, including Professional Fee Claims), unless in each case the Plan provides otherwise.

(bbb)    **Professional** means any person retained by the Debtor or Committee, pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

(ccc)    **Professional Fee Claim** means any claim of a Professional for allowance by the Bankruptcy Court and payment by the Debtor of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Case for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

(ddd)    **Proof of Claim** means any proof of claim filed with the Bankruptcy Court or the Notice and Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against the Debtor.

(eee)    **Property of the Estate** means all property of the Debtor and the Estate pursuant to section 541 of the Bankruptcy Code.

(fff)   **Quarterly Fees** means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

(ggg)   **Reinstatement** or **Reinstated** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim (other than the Debtor or an "insider" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder thereof.

(hhh)   **Releasing Party** means each party identified in clauses (a) through (m) of the definition of Released Parties. Notwithstanding anything to the contrary herein, the term "Releasing Party" shall not include Claimants who (w) are not entitled to vote on the Plan, (x) do not vote on the Plan, (y) vote to reject the Plan, or (z) vote to accept the Plan but do not affirmatively opt in to Third-Party Releases in Section 8.03(c) of this Plan by checking the applicable box to opt in on their ballot.

(iii)   **Released Parties** means individually or collectively, (a) each Claimant that elects to opt in to the Third-Party Releases in Section 8.03(c) of this Plan by checking the applicable box to opt in on their ballot. Notwithstanding anything to the contrary herein, the term "Released Parties" shall not include (i) claimants not otherwise a Releasing Party; or (ii) Claimants who (w) are not entitled to vote on the Plan, (iii) do not vote on the Plan, (iv) vote to reject the Plan, or (v) vote to accept the Plan but do not affirmatively opt in to Third-Party Releases in Section 8.03(c) of this Plan by checking the applicable box to opt in on their ballot.

(jjj)   **Reorganized Debtor** means the Debtor as reorganized pursuant to and under the Plan on and after the Effective Date, or the successor in interest thereto.

(kkk)   **Schedule of Assumed Executory Contracts and Unexpired Leases** has the meaning ascribed to such term in Section 7.01.

(lll)   **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

(mmm)   **Secured** means, with respect to any Claim, the extent to which the Claim is:

(a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

(nnn) **Triggering Creditor** has the meaning ascribed to such term in Section 6.02

(ooo) **Unexpired Lease** means a lease to which the Debtor is a party, including any and all pre- and post-petition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code. Each of the Landlord Leases is an Unexpired Lease.

(ppp) **Unimpaired** means any Claim that is not Impaired, including any Claim that is Reinstated.

(qqq) **Unsecured Claim** means a Claim that is not a Secured Claim.

1.02    Interpretation; Application of Definitions and Rules of Construction. For purposes of the Plan, unless otherwise provided herein: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (3) any reference in the Plan to an existing document, schedule or exhibit filed or to be filed means such document, schedule or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (4) any reference to a Entity as a holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise stated, all references in the Plan to Articles or Sections are references to Articles or Sections of the Plan, as the same may be amended or modified from time to time in accordance with the terms hereof; (6) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Article or clause contained in the Plan; (7) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (9) [reserved]; (10) captions and headings to Articles or Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries; and (13) in computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided herein, the

12

provisions of Bankruptcy Rule 9006(a) shall apply.

1.03    Controlling Document. In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, the Plan Supplement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control; provided, however, that in the event of a conflict between Confirmation Order and the Plan (including the Plan Supplement), the Confirmation Order shall govern and control in all respects.

1.04    Claims

Class 1 – Secured Tax Claims. The secured claim of the Internal Revenue Service in the amount of $ 1,701,788.01.

Class 2 – Priority Tax Claims. The priority claim of the Internal Revenue Service in the amount of $ 951,208.03.

Class 3 – General Unsecured Claims.  The General Unsecured claims in the amount of $597,052.77.

3.01 – AIRGAS USA LLC - $3,816
3.02 - AIRGAS USA LLC - $37,107.68
3.03 – AIRGAS USA LLC - $5,262.46
3.04 – LIFE-ASSIST INC.- $10,454,63
3.05 – AETNA, INC. - $1800.00
3.06 – JRG FUNDING - $187,680.00
3.07 - B&E MEDICAL SUPPLY - $8,000.00
3.08 -  BLUE ROSS BLUE SHIELD OF TEXAS - $32,000.00
3.09 – ENVI HEALTH SOLUTIONS - $32,000.00
3.10 – U.S. DEPT OF HEALTH HUMAN SERVICES -$14,000
3.11 – MOORE MEDICAL LLC - $10,000
3.12 – STX DIESEL - $7,000.00
3.13 – FORWARD FINANCING  - $125,000.00
3.14 – INTUIT PAYROLL - $76,000.00
3.15 – EXPERIAN - $46, 932

Class 4 – Unsecured Non-Priority Tax Claims. The unsecured nonpriority claim of the Internal Revenue Service in the amount of $902,379.07.

Class 5 – Litigation Claims. The litigation claim of Sarai Cabello in the amount of $750,000.00.

Class 6 – Equity Interests.  The equity interests.

ARTICLE II: OVERVIEW OF PLAN

2.01    Generally.

The Debtor's funding for the Plan comes from the sources described in Section 6.02.

The Debtor employs 2 insiders – Mr. Johnny Cordero, the Debtor's Chief Executive Officer and Ms. Maria I. Rodriguez, the Debtor's Chief Administrative Officer, each earning $75,000 annually. Ms. Rodriguez is the lone shareholder of the Debtor and Mr. Cordero is her husband.

2.02    Exhibits.

The Debtor's liquidation analysis is attached as **Exhibit A** to the Plan. The Debtor's financial projections are attached as **Exhibit B** to the Plan, and the Debtor's previous monthly operating reports are summarized for reference as **Exhibit C**. The Schedule of Assumed Executory Contracts and Unexpired Leases is attached as **Exhibit D** to the Plan, and discloses which Executory Contracts and Unexpired Leases will be assumed as of the Effective Date and any applicable Cure Amounts payable in connection with such assumption. **Exhibit E** discloses the Debtor's assets.

2.03    Modifications.

The Debtor reserves the right to modify, supplement or amend this Plan and the Exhibits to this Plan prior to the Confirmation Date, in accordance with Article X of this Plan, the Bankruptcy Code, and the Bankruptcy Rules.

ARTICLE III: PROVISIONS APPLICABLE TO ALL CLAIMS

3.01    Treatment of Claims.

This Plan resolves all Claims against the Debtor and its property of whatever character, whether contingent or liquidated, or whether or not Allowed. The Plan is designed to ensure that, consistent with section 1129(a)(7) of the Bankruptcy Code, each Creditor will receive or retain under the Plan on account of its Claim no less than the amount such Creditor would so receive or retain in a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code, as set forth in the Debtor's Liquidation Analysis attached as **Exhibit A** to this Plan.

3.02    Allowed Claims.

To receive a Distribution under the Plan, a Creditor must have an Allowed Claim.

3.03    Amount of Claims.

If the Debtor has listed a Claim in the Schedules and has not listed such Claim as disputed, contingent, or unliquidated, then the amount listed in the Schedules shall control, unless the Creditor filed a Proof of Claim in a different amount or a party in interest files a timely objection to the Claim listed in the Schedules. If a Creditor filed a Proof of Claim, then the amount stated in

14

the Proof of Claim shall control, unless a party in interest files a timely objection to the Claim. If a party in interest files a timely objection to a Claim for which a Proof of Claim is filed, or to a Claim listed in the Schedules, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been listed in the Schedules as disputed, contingent, or unliquidated and the Creditor did not file a Proof of Claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.04    Allowance of Post-Petition Interest, Fees, and Costs.

Unless otherwise provided in the Plan, a Claim shall not be entitled to post-petition interest, fees, or costs.

3.05    Filing of Administrative Claims.

Any requests for Allowance of Administrative Expense Claims shall be filed within forty-five (45) days after the Effective Date or shall be barred.

3.06    Filing of Requests for Post-Petition Fees or Costs.

Any requests for Allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed within forty-five (45) days after the Effective Date or shall be barred.

3.07    Objections to Claims.

The Reorganized Debtor may object to any Administrative Expense Claim (other than a Professional Fee Claim, which is governed by Section 4.02), Priority Tax Claim, Other Priority Claim, Other Secured Claim, General Unsecured Claim, or Equity Interest any time prior to the Claims Objection Deadline. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

3.08    Distributions Generally.

Distributions under this Plan shall be made by the Reorganized Debtor from the GUC Distribution Reserve. The Reorganized Debtor shall maintain  such reserve in a segregated account held by the Reorganized Debtor in trust for the benefit of holders of General Unsecured Claims, the Unsecured Non-Priority Tax Claim of the Internal Revenue Service, and the Litigation Class claim of Sarai Cabello,  as applicable. The Reorganized Debtor will use its best efforts to hold the GUC Distribution Reserve in an interest- bearing account.

3.09    Distributions on Contested Claims.

No Distributions under this Plan shall be made on account of a Contested Claim, unless and until such Claim becomes an Allowed Claim. When and if a Contested Claim becomes an Allowed Claim, the Reorganized Debtor shall, at the next scheduled Distribution under the Plan to the Class of Creditors into which the Claim is classified, pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the

Effective Date. If a Claim is Disputed in whole or in part because the Debtor asserts either a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is Allowed by Final Order and the Debtor's right of offset or recoupment is also granted by Final Order, the Claim shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay any amount outstanding to the Reorganized Debtor following such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Bankruptcy Code may request that the Bankruptcy Court estimate any contingent, Disputed, or unliquidated Claim pursuant to 11 U.S.C. § 502(c) prior to the Claims Objection Deadline.

3.10     Undeliverable Distributions. If any Distribution to a holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further Distributions shall be made to such holder unless and until the Reorganized Debtor is notified in writing of such holder's then- current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such holder within ninety (90) days of receipt of such holder's then-current address or other necessary information; provided, however, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred; provided that Distributions made from the GUC Distribution Reserve and returned as undeliverable shall revert to the  GUC Distribution Reserve.

3.11     Non-Negotiated Distributions. If any Distribution to a holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in the Reorganized Debtor or re-vest in the GUC Distribution Reserve if such Distribution was made from the GUC Distribution Reserve. After such date, all non-negotiated property or interests in property shall revert to the Reorganized Debtor or the GUC Distribution Reserve automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any holder to such property or interest in property shall be discharged and forever barred.

3.12     Satisfaction of Claims. Except as otherwise specifically provided in the Plan, the total Distributions to be made on account of an Allowed Claim under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claim.

ARTICLE IV: UNCLASSIFIED CLAIMS

4.01     Administrative Expense Claims.

Each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims and Quarterly Fees) shall receive, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to the

unpaid portion of such Allowed Administrative Expense Claim, or such amounts and on other such terms as may be agreed to by the holders of such Claims, on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; (c) such other date(s) as such holder and the Debtor or Reorganized Debtor shall have agreed; or (d) such other date ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims arising from the Debtor's operations during the Chapter 11 Case may be paid by the Debtor or Reorganized Debtor in the ordinary course of operations and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice between the Debtor and the holder of the Administrative Expense Claim, including any payment plan or arrangement agreed to between the Debtor or Reorganized Debtor, as applicable, on the one hand, and the holder of an Administrative Expense Claim and/or Cure Amount, on the other hand, so long as the payments do not interfere with Plan payments contemplated to be made by Debtor or Reorganized Debtor.

All Quarterly Fees due and payable prior to the Effective Date shall be paid on or before the Effective Date. The Reorganized Debtor shall pay all such fees that arise after the Effective Date, before the closing of the Chapter 11 Case, and shall comply with all applicable statutory reporting requirements.

4.02     Professional Fee Claims.

1.      Final Fee Applications.

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed with the Bankruptcy Court no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtor shall satisfy all Allowed Professional Fee Claims within 30 days after the Professional Fee Claim Amounts are Allowed, unless the Professional Fee Claimant and the Debtor or Reorganized Debtor agree to other payment terms.

2.      Professional Fee Claims Estimates.

Professionals shall reasonably estimate their unpaid Professional Fee Claims incurred in rendering services to the Debtor or the Estate before and as of the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) Business Days before the Effective Date; *provided*, *however*, such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final application for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtor or Reorganized Debtor shall estimate the unpaid and unbilled fees and expenses of such Professional.

3.      Post-Effective Date Fees and Expenses.

Upon the Effective Date, any requirement that Professionals comply with sections 327

through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may, in its discretion, employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

4.03   Other Priority Claims.

Except to the extent that a holder of an Allowed Other Priority Claim agrees to less favorable treatment, each holder of an Allowed Other Priority Claim shall receive on account of and in full and complete settlement, release and discharge of, and in exchange for, such Allowed Other Priority Claim, at the sole option of the Debtor or Reorganized Debtor, as applicable:

(1) Cash in an amount equal to such Allowed Other Priority Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is an Allowed Other Priority Claim on the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date such Other Priority Claim becomes an Allowed Other Priority Claim; and (c) the date such Allowed Other Priority Claim is due and payable in the ordinary course as such obligation becomes due; provided, however, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time without penalty or premium.

ARTICLE V: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

5.01   Class 1 – Secured Tax Claims.

Classification: Class 1 consists of Secured Tax Claims.

The secured claim of the Internal Revenue Service [Claim 1] in the amount of $ 1,701,788.01 which consists of unpaid taxes of $ 1,539,231.55 and unpaid interest of $162,556.46.

Treatment:   The Debtor proposes to pay the Internal Revenue Service, its Secured Claim of $ 1,701,788.01 which includes tax and interest, minus any cash collateral payments that might be applied to the secured claim in full.  Debtor shall pay this $1,701,788.01 by remitting monthly payments of $38,035.43  for 52 months with interest on the unpaid balance accruing at 7% per annum. These payments shall begin thirty (30) days from the confirmation date. Nevertheless, should the Debtor be unsuccessful in repaying the Internal Revenue Service its Secured Claim of $1,701,788.01 in full, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

Voting: Class 1 is impaired and each holder of a Secured Tax Claim is entitled to vote to accept or reject the Plan.

5.02     Class 2 – Priority Tax Claims.

Classification: Class 2 consists of Priority Tax Claims.

The Unsecured Priority Tax Claim of the Internal Revenue Service [Claim 1] in the amount of $ 951,208.03 which consists of unpaid taxes of $ 869,113.18 and unpaid interest of $ 82,094.85.

Treatment:     The Debtor proposes to pay the  Internal Revenue Service its  Unsecured Priority Claim of $951,208.03 which includes tax and interest,  minus any cash collateral payments that might be applied to the unsecured priority claim.  Debtor shall pay this $ 951,208.03  by remitting monthly payments of  $21,259.76 for 52 months with interest on the unpaid balance accruing at 7% per annum.  These payments shall begin thirty (30) days from the confirmation date. Nevertheless, should the Debtor be unsuccessful in repaying the Internal Revenue Service this Unsecured Priority Claim of $ 951,208.03 in full, the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

Voting: Class 2 is impaired and each holder of a Priority Tax Claim is entitled to vote to accept or reject the Plan.

5.03     Class 3 – General Unsecured Claims

Classification: Class 3 consists of all General Unsecured Claims ($597,052.77). Sec. 1.04 *supra.*

Treatment: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Cash Pool up to the full amount of such Allowed General Unsecured Claim following the payment in full of all secured and priority classes; provided that the Reorganized Debtor shall not be required to make Distributions to any holder of an Allowed General Unsecured Claim if such Distribution is less than $50.00. Allowed General Unsecured Claims shall accrue interest at the rate of four percent (4%) per annum from and after the date the claim is allowed until it is paid in full.

The General Unsecured Claims will receive pro rata distributions from the GUC Cash Pool; the Reorganized Debtor will make Post-Emergence Monthly Payments in the amount of $12,524.68 to the GUC Distribution Reserve after the Effective Date to fund the GUC Cash Pool. If the Reorganized Debtor does not make the Post-Emergence Monthly

19

Payments to the GUC Distribution Reserve when due under the Plan, the holder of any unsatisfied General Unsecured Claim can serve written notice of default on the Reorganized Debtor. If the Reorganized Debtor does not cure such default, or if the Bankruptcy Court determines that a default has occurred (as set forth in section 6.02 of the Plan), such holder may pursue any and all remedies available under applicable state or federal law and assert a default interest rate of 4% accruing as of the date of the default.

**These payments to the GUC Distribution Reserve shall begin thirty (30) days after the confirmation date.**

<u>Voting</u>: Class 3 is Impaired, and each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan

5.04    <u>Class 4 – The Unsecured Non-Priority Tax Claim of the Internal Revenue Service</u>.

[Claim 1] in the amount of $ 902,379.07 which consists of unpaid penalties.

<u>Treatment:</u>  The Debtor proposes to pay the  Internal Revenue Service its Unsecured Non-Priority Tax Claim
**as follows:**

Except to the extent that the Internal Revenue  agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, the Internal Revenue Service shall receive its Pro Rata share of the GUC Cash Pool up to the full amount of such Allowed General Unsecured Claim **following the payment in full of all secured and priority classes**. The Allowed General Unsecured Claim shall accrue interest at the rate of four percent (4%) per annum from and after the date the claim is allowed until it is paid in full.

The Internal Revenue Service will receive pro rata distributions from the GUC Cash Pool; the Reorganized Debtor will make Post-Emergence Monthly Payments in the amount of $18,929.67 to the GUC Distribution Reserve after the Effective Date to fund the GUC Cash Pool. If the Reorganized Debtor does not make the Post-Emergence Monthly Payments to the GUC Distribution Reserve when due under the Plan, the Internal Revenue Service can serve written notice of default on the Reorganized Debtor. If the Reorganized Debtor does not cure such default, or if the Bankruptcy Court determines that a default has occurred (as set forth in section 6.02 of the Plan), such holder may pursue any and all remedies available under applicable state or federal law and assert a default interest rate of 4% accruing as of the date of the default.

**These payments to the GUC Distribution Reserve shall begin thirty (30) days after the confirmation date.**

<u>Voting</u>: Class 4 is impaired and each holder of an Unsecured Non-Priority Tax Claim is entitled to vote to accept or reject the Plan.

**Payments to Internal Revenue Service**

Payments will be mailed to:
Internal Revenue Service
STOP MC5026 DAL
1100 COMMERCE ST.
DALLAS, TX 75242

5.05    Class 5 – Litigation Class- Sarai Cabello.

Classification: Class 5 consists of prepetition litigation cases.

The Debtor scheduled a $750,000 claim on disputed Sarai Cabello cause of action, ("Cabello claim"). The Cabello claim is disputed and contested. The Allowed Claim of Cabello shall be determined through litigation in the state court of appropriate jurisdiction as ordered by the Bankruptcy Court.  However, enforcement of any judgment shall be determined by the Bankruptcy Court.

Cabello's Allowed claim shall be funded from the proceeds arising from the Debtor's regular ongoing business from which Debtor shall pay $15,733.14 into the GUC Distribution Reserve each month.

**These payments to the GUC Distribution Reserve shall begin thirty (30) days after the confirmation date.**

Cabello's Allowed Claim shall accrue interest at the rate of four percent (4%) per annum from and after the date the claim is allowed until it is paid in full. Cabello's Allowed Claim shall receive monthly payments in *pro-rata* share along with 4% interest (with the other unsecured classes) from the GUC Fund from and after the claim is allowed and following the payment in full of all secured and priority classes.

Voting: Class 5 claim is impaired and entitled to vote.

5.06    Class 6 – Equity Interests.

Classification: Class 6 consists of all Equity Interests in the Debtor.
Treatment: On the Effective Date, Equity Interests in the Debtor shall be retained.

Voting: Class 6 is Impaired, and each holder of an Equity Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Equity Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Equity Interests.

ARTICLE VI: IMPLEMENTATION OF THE PLAN

6.01   <u>In General</u>.

If the Plan is approved by the Bankruptcy Court, a Confirmation Order will be entered. The Debtor will continue to operate as a debtor-in-possession and discharge its duties under Chapter 11 until the Effective Date of the Plan.

6.02   <u>Implementation of the Plan and Sources of Funds for the Plan</u>.

The Debtor is a Texas corporation founded in January 2010, which employs 96 employees and operates 56 vehicles in its business providing emergency (911) ambulance transportation services to residents of Jim Hogg County, Texas, Precincts 1 and 3 of Hidalgo County, Texas and the City of Palmhurst, Texas.

Skyline EMS, Inc. is licensed through the Texas Department of State Health Services to provide the level of care as Mobile Intensive Care Unit (MICU) and Advance Life Support (ALS). All of Skyline EMS ambulances are staffed with Texas Department of State Health Certified and/or Licensed Paramedics, Intermediates and Basic EMT's. Each unit staffed with an EMT-Paramedic or Advance-EMT attendant; and a driver certified as an EMT- Basic, EMT-Intermediate, or EMT-Paramedic.

A substantial portion of the Debtor's revenue, and therefore projected earnings, derive from its contracts with CMS Medicare.  The Debtor is not currently aware of any regulatory concerns at this time.  Medicare for instance is considered a mandatory federal program, meaning its funding doesn't rely on the annual budget process that causes most shutdowns. That means core benefits – including hospital care (Part A), doctor visits (Part B) and prescription drugs (Part D) – continue uninterrupted.

The Debtor's funding for the Plan comes from two sources. First, Debtor operates an emergency (911) ambulance transportation company which earns, using 2024 tax return receipts numbers, of $7,853,341 annually or  $654,445.08 monthly.

The Debtor currently employs 96 employees and operates 56 vehicles in its business.  Skyline EMS, Inc. currently is the 911 provider for the following Counties, Cities and entities:
- Jim Hogg County;
- Hidalgo County Precinct 1;
- Hidalgo County Precinct 3;
- City of Palmhurst, Texas; and
- Knapp Medical Center

Additionally, the Debtor currently has $5,588,519 in accounts receivables and the Debtor's September operations yielded a monthly net profit of $ 242,363. The Debtor will factor out batches of accounts receivables to fund the plan.

(a)   <u>The Post-Emergence Monthly Payments</u>.

1.      Monthly Payments to GUC Distribution Reserve.

Beginning on the first Business Day that is at least thirty (30) calendar days after the Effective date and continuing on the same date of each month thereafter (or the next Business Day, if such date is not a Business Day), the Debtor or Reorganized Debtor shall issue plan payments to the Allowed Secured and Priority Claims in the amounts described in paragraphs 5.01 and 5.02 supra for Class 1 and Class 2 claims.

2.      Monthly Payments to GUC Distribution Reserve.

Beginning on the first Business Day that is at least thirty (30) calendar days after the Effective date and continuing on the same date of each month thereafter (or the next Business Day, if such date is not a Business Day), the Debtor or Reorganized Debtor shall transfer Cash to the GUC Distribution Reserve in an amount of $ **47,187.49.**  The Reorganized Debtor shall make a Pro Rata Distribution to the holders to Allowed General Unsecured Claims of all amounts in the reserve (less any minimum amount required to be maintained in the account by the applicable depository institution) following the payment in full of all secured and priority claims; provided that the Reorganized Debtor shall not be required to make Distributions to any holder of an Allowed General Unsecured Claim if such Distribution is less than $50.00. To avoid doubt, the obligations of the Reorganized Debtor  to make payments to the GUC Distribution Reserve shall be unsecured and subject to the default and remedy provisions set forth in this section 6.02.

3.      Default; Remedies.

In the event the Reorganized Debtor fails to pay when due **$ 47,187.49 to** the GUC Distribution Reserve, or pay when due the monthly amounts due to unsecured claims, then any holder of an unsatisfied Allowed General Unsecured Claim (such creditor, the "**Triggering Creditor**") may provide the Reorganized Debtor with written notice of a potential default as per section 12.01 of this Plan..

Notwithstanding anything herein to the contrary, all Allowed Professional Fee Claims shall be satisfied in full by no later than May 1, 2026 (the "Professional Fee Payment Outside Date").

In the event a court of competent jurisdiction, including the Bankruptcy Court, determines that an event of default has occurred on account of Reorganized Debtor's failure to make the required payments, the Reorganized Debtor shall have a further five business days after such determination to pay the full amounts. If the Reorganized Debtor fails to pay such amount, each holder of an unsatisfied Allowed Professional Fee Claim or Allowed General Unsecured Claim may: (1) pursue any and all remedies available under applicable state or federal law (provided, however, that Texas law shall govern, and venue shall be proper only in either the District Court for Hidalgo County, Texas or the Bankruptcy Court); and (2) assert a default interest rate of four percent (4%) with such interest rate accruing as of the date of the default.

4.      Obligations.

The obligations of the Debtor or Reorganized Debtor are to make the Post-Emergence Monthly Payments.

6.03    Compromise and Settlement of Claims, Interests and Controversies.

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, as of the Effective Date, the provisions of the Plan, set forth in Section 6.03(a) and 6.03(b), respectively, shall constitute good-faith compromises and settlements of Claims, Equity Interests, and controversies among the parties thereto relating to the contractual, legal, equitable and subordination rights that holders of Claims or Equity Interests may have with respect to any Claim or Equity Interest under the Plan or any Distribution to be made on account of an Allowed Claim. The Plan shall be deemed a motion, proposed by the Debtor and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Equity Interests, and controversies among the parties thereto, as well as a finding by the Bankruptcy Court that such compromises and settlements are in the best interests of the Debtor, its Estate, and holders of Claims and Equity Interests, and is fair, equitable and reasonable under the circumstances.

(i)     General Unsecured Claims shall be Allowed or Disallowed as set forth in Article III and receive the treatment afforded to such Claims in Section 5.05.

(ii)    The Debtor (on behalf of itself and the Reorganized Debtor) shall make the Post-Emergence Monthly Payments to the GUC Distribution Reserve as well as to the Secured and Priority Classes as provided for in Section 6.02.

(iii)   As of the Effective Date, the Debtor (on behalf of itself and the Reorganized Debtor) and its Estate, and any and all other entities who may purport to assert any Claims or Causes of Action, directly or derivatively, by, through, for, or because of the Debtor or its Estate, forever releases each holder of an Allowed General Unsecured Claim from any Avoidance Action.

6.04    Authorization. The Reorganized Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code and Bankruptcy Rules. The Reorganized Debtor and each of its officers are authorized, empowered and directed to execute all documents necessary or appropriate to effectuate the terms of the Plan to the fullest extent allowed under the Bankruptcy Code, including Section 1142(b).

ARTICLE VII: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01    Assumption or Rejection of Executory Contracts and Unexpired Leases.

**Exhibit D** to this Plan lists the Debtor's Assumed Executory Contracts and Unexpired Leases, and discloses which Executory Contracts and Unexpired Leases will be assumed and any applicable Cure Amounts (the "**Schedule of Assumed Executory Contracts and Unexpired Leases**"). The Schedule of Assumed Executory Contracts and Unexpired Leases may be amended or supplemented as provided herein.

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed rejected by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) are identified on the Schedule of Assumed Executory Contracts and Unexpired

24

Leases as assumed; (2) have been previously assumed or rejected by the Debtor pursuant to a Final Order; or (3) are, as of the Effective Date, the subject of (a) a motion to assume or reject that is pending or (b) an order of assumption or rejection by the Bankruptcy Court that is not yet a Final Order.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases (in each case, including any agreed modifications between the Debtor and the counterparty to such Executory Contract or Unexpired Lease, as applicable) as set forth in this Plan, or the Schedule of Assumed Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, in the Schedule of Assumed Executory Contracts and Unexpired Leases (as applicable), assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to this Plan are effective as of the Effective Date (unless otherwise set forth herein). Each Executory Contract or Unexpired Lease assumed pursuant to this Plan or by Bankruptcy Court order but not assigned to a third-party before the Effective Date shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, including in accordance with any amendments executed by the Debtor and the counterparties to the applicable Executory Contract or Unexpired Lease during the Chapter 11 Case and effective upon assumption by the Debtor; *provided* that, prior to the Effective Date and in connection with such assumption, any such terms that are rendered unenforceable by the provisions of this Plan or the Bankruptcy Code shall remain unenforceable solely in connection therewith. Any motions to assume or reject, or any objections to Cure Amounts for any Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to approval by a Final Order on or after the Confirmation Date in accordance with any applicable terms herein unless otherwise settled by the Debtor and counterparties.

**Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all objections to the assumption or rejection of any Executory Contract or Unexpired Lease, and any requests for payment of Cure Amounts that differ from the Cure Amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty as set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, must be filed with the Bankruptcy Court on or before the date set by the Bankruptcy Court as the deadline to object to the Plan. Any such objections or requests that are not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or rejection of any Executory Contract or Unexpired Lease, or to the Debtor's proposed Cure Amount, will be deemed to have consented to such assumption, rejection, and/or Cure Amount, as applicable.**

Notwithstanding anything to the contrary in this Plan, the Debtor or the Reorganized Debtor, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to and including the Confirmation Date or any date the Bankruptcy Court rules on a disputed Cure Amount, and such assumption or rejection shall be effective as if it was made on the Effective Date, provided, the

counterparty to any Executory Contracts or Unexpired Leases affected by such alteration, amendment, modification, or supplement will have 21 days from the service of such amended Schedule of Assumed Executory Contracts and Unexpired Leases to object to such alteration, amendment, modification, or supplement, and request an emergency hearing on the same. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to such amended Schedule of Assumed Executory Contracts and Unexpired Leases, file such objection, and request an emergency hearing on the same will be deemed to have consented to such amendment.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, extensions, or escalators.

The transactions contemplated by this Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan, or any other transaction, event, or matter that would (a) result in a violation, breach or default under such Executory Contract or Unexpired Lease, (b) increase, accelerate or otherwise alter any obligations, rights or liabilities of the Debtor or the Reorganized Debtor under such Executory Contract or Unexpired Lease, or (c) result in the creation or imposition of a Lien upon any property or asset of the Debtor or the Reorganized Debtor pursuant to the applicable Executory Contract or Unexpired Lease. Any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption or assumption and assignment thereof shall be deemed satisfied by Confirmation. To the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to this Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-Debtor party or parties to such Executory Contract or Unexpired Lease to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease (including any that may be added/ listed on **Exhibit D**), on the Effective Date, the Debtor or the Reorganized Debtor, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases and the Final Orders otherwise assuming Executory Contracts and Unexpired Leases, satisfy all Cure Amounts relating to Executory Contracts and Unexpired Leases that are being assumed under this Plan from the Debtor's own assets on the effective date of such assumption or as soon as reasonably practicable thereafter.

Nothing contained in this Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtor has any liability thereunder.

7.02    Claims for Rejected Executory Contracts and Unexpired Leases.

Counterparties to rejected Executory Contracts and Unexpired Leases shall have 30 days

from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor or the Reorganized Debtor, the Estate, or their property without the need for any objection by the Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Proof of Claim to the contrary.**

## ARTICLE VIII: CAUSES OF ACTION

8.01    Potential Litigation.

Subject to Section 8.03 of this Plan, the Debtor or Reorganized Debtor, as applicable, explicitly preserves all Claims and Causes of Action and may pursue such Claims and Causes of Action after the Effective Date or may be enforced by way of setoff against Claims filed against the Estate. The Reorganized Debtor has sole discretion to prosecute any such litigation and to object to any Claims as it sees fit, subject to the terms of this Plan.

8.02    Preserved Litigation.

Unless a Cause of Action is expressly waived, relinquished, released, or compromised in the Plan, including through Section 8.03 of this Plan, or an order of the Bankruptcy Court, the Debtor or Reorganized Debtor, as applicable, expressly reserves such Cause of Action for later adjudication and, accordingly, no doctrine of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), laches, or other preclusion doctrine will apply to such Cause of Action as a consequence of the confirmation, the Plan, the vesting of such Cause of Action in the Reorganized Debtor, any order of the Bankruptcy Court or this Chapter 11 Case. No Entity may rely on the absence of a specific reference in the Disclosure Statement and Plan to any Cause of Action against them as an indication that the Debtor or Reorganized Debtor, as applicable, will not pursue such Cause of Action against them. The Debtor or Reorganized Debtor, as applicable, instead expressly reserve all rights to prosecute any and all Causes of Action against any Entity, in accordance with the Plan.

Except as otherwise provided by this Plan, upon the Effective Date, the Causes of Action shall be deemed transferred to the Reorganized Debtor free and clear of all Claims and Equity Interests, in accordance with section 1141 of the Bankruptcy Code.

## ARTICLE IX: EFFECT OF CONFIRMATION

9.01    Vesting of Property.

As of the Effective Date, the Reorganized Debtor shall be vested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan. Subject to the releases contained in Section 8.03 of this Plan, such Property of the Estate shall include all Claims or Causes of Action arising in favor of the Debtor, under the Bankruptcy Code or any other applicable law; provided, however, that if after Confirmation the Chapter 11

27

Case is converted to a case under Chapter 7 of the Bankruptcy Code and there is an uncured default by the Reorganized Debtor under the Plan, all of such property and claims shall revest in the Estate upon such conversion.

9.02    Plan Binding.

Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor, the Estate, the Reorganized Debtor, the Debtor's Creditors, and the holder of Equity Interests in the Debtor, and each of its and their respective successors and assigns, and all Entities that are affected in any manner by the Plan, regardless of whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Entities referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Entities have actually executed such agreement.

9.03    Reliance on Other Parties.
In connection with the Plan, the Debtor and its officers, representatives, attorneys, accountant, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reasonable reliance shall presumptively establish good faith.

9.04    Discharge.

Except as provided by sections 4.10 and 4.14 of the Disclosure Statement and section 12.01 *infra,* confirmation of the Plan shall discharge the Debtor of all its pre-Confirmation debts.

9.05    Permanent Injunction.

Except as provided by sections 4.10 and 4.14 of the Disclosure Statement and section 12.01 *infra,* Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtor. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, the Reorganized Debtor, or their assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, the Reorganized Debtor, or their assets with respect to any Claim; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor, the Reorganized Debtor, or their assets with respect to any Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor except as may be allowed under the Bankruptcy Code or the Plan with respect to any Claim; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that (1) each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and (2) all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant

to or in connection with the Plan.

## ARTICLE X: MODIFICATION OF THE PLAN

10.01   <u>Post-Confirmation Amendment or Modification of the Plan</u>.

Subject to the restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtor as proponent of the Plan, reserves the right to modify this Plan without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. All amendments or modifications to the Plan must be reasonably acceptable to the Professionals to the extent they pertain to the treatment of Professional Fee Claims. After the Confirmation Date and before substantial consummation of the Plan, the Debtor may initiate proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan. After the Confirmation Date, but before the Effective Date, the Debtor may make appropriate technical amendments and modifications to the Plan (including the Plan Supplement) without further order or approval of the Bankruptcy Court; provided, however, that such amendments and modifications shall not materially or adversely affect the treatment of holders of Claims or Interests.

10.02   <u>Deemed Acceptance or Rejection</u>.

A holder of a Claim or Equity Interest that has accepted or rejected the Plan may be deemed to have accepted or rejected, as the case may be, the Plan as amended or modified, solely as set forth in 11 U.S.C. § 1127 and Bankruptcy Rule 3019.

10.03   <u>Revocation or Withdrawal of the Plan</u>.

The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Equity Interest in, the Debtor or any other Entity; (ii) prejudice in any manner the rights of the Debtor or any other Entity; or (iii) constitute an admission of any sort by the Debtors or any other Entity.

## ARTICLE XI: POST CONFIRMATION MATTERS

11.01   <u>Application for Final Decree</u>.

After the occurrence of the Claims Objection Deadline (subject to any extensions approved

by an order of the Bankruptcy Court) and after the Chapter 11 Case has been fully administered (other than payment of Allowed Claims, which may occur after the Chapter 11 Case is closed), the Reorganized Debtor shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court for issuance of a final decree and order closing the Chapter 11 Case. Any party-in-interest may move to reopen the Chapter 11 Case once closed.

11.02   U.S. Trustee.

(a)   Fees.

The Reorganized Debtor shall continue to pay all fees incurred under 28 U.S.C. § 1930 until the Chapter 11 Case is closed. All outstanding U.S. Trustee fees shall be paid on the Effective Date.

(b)   Reports.

The Reorganized Debtor shall file quarterly post-confirmation reports in the form prescribed by the United States Trustee until the Chapter 11 Case is closed.

ARTICLE XII: DEFAULT

12.01   Default by Debtor or Reorganized Debtor.

In the event of a default by the Debtor or the Reorganized Debtor under the Plan, Creditors may exercise any rights granted to them under documents executed to implement the Plan or any rights available to such Creditors under applicable non-bankruptcy law. The Plan may be enforced as a contract. Unless notice and an opportunity to cure was provided pursuant to another provision of this Plan (including Section 6.02 with respect to Post-Emergence Monthly Payments), any holder of an Allowed Claim that alleges a default shall give the Reorganized Debtor thirty (30) days' written notice and an opportunity to cure before exercising any rights available upon default against the Debtor or the Reorganized Debtor.

**Internal Revenue Service Rights Upon Default**

The federal tax liens survive the plan confirmation, a bankruptcy discharge, and dismissal of the case. The liens continue to be enforceable against the Reorganized Debtor's property to the extent, priority, and validity such liens were entitled to as of the Petition Date and under federal law.

Additionally:

(i)   The debt owed by the Debtor to the Internal Revenue Service is a nondischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the Internal Revenue Service is not subject to the provisions of the Bankruptcy Code so that the Internal Revenue Service can take whatever actions are necessary to collect said debt in the event of default; the federal tax liens survive the plan confirmation, a bankruptcy discharge, and

dismissal of the case. The liens continue to be enforceable against all of the Debtor's property under federal law.

(ii)     A failure by the Reorganized Debtor to make a payment to the Internal Revenue Service pursuant to the terms of the Plan shall be an event of default, and as to the Internal Revenue Service, there is an event of default if payment is not received by the fifteenth (15th) day of each month. If there is a default, the Internal Revenue Service must send written demand for payment, and said payment must be received by the Internal Revenue Service within fifteen (15) days of the date of the demand letter. The Debtor can receive up to three (3) notices of default from the Internal Revenue Service; however, on the third (3rd) notice of default from the Internal Revenue Service, the third (3rd) notice of default cannot be cured, , and the Internal Revenue Service may accelerate its allowed claim(s), past and future, and declare the outstanding amount of such claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies. These default provisions pertain to the entire claim(s) of the Internal Revenue Service, secured, unsecured priority, unsecured general and administrative priority.

(iii)    The Internal Revenue Service is bound by the provisions of the confirmed Plan and is barred under Section 1141 of the Bankruptcy Code from taking any collection actions against the Reorganized Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the Internal Revenue Service). The period of limitations on collection remains suspended under 26 U.S.C. § 6503(h) for the tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the Internal Revenue Service have been made; or (2) thirty (30) days after the date of the demand letter (described above) for which the debtor failed to cure the default.

(iv)     The Debtor's or Reorganized Debtor's failure to remain current on its ongoing tax obligations shall be an event of default under the terms of the Plan. The Debtor is required to stay current on all ongoing tax reporting/tax payments with the Internal Revenue Service. If the debtor defaults to the Internal Revenue Service (in the timely filing of any future tax return and/or the payment of any ongoing tax liability) this is an event of default to the plan term agreement. The Internal Revenue Service must send written demand to the Debtor or Reorganized Debtor of the default and the Debtor must cure the default within fifteen (15) days of the date on the demand letter. If the default is not cured within fifteen (15) days, the Internal Revenue Service may assert the balance on the proof of claim still remaining which will include tax, interest and penalty to be due and owing and the entire balance (after crediting all payments made) may go out for collection.

(v)      Internal Revenue Service remedies upon default:  Upon any final and non-curable default by the Reorganized Debtor, the Internal Revenue Service may accelerate its allowed pre- and post-petition claims (and any future administrative claims), and declare the outstanding amounts of such claims to be immediately due and owing. The Internal Revenue Service may pursue any and all available state and

federal rights and remedies as provided by law without further order of this Court.

12.02   Conversion to Chapter 7.

Conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code shall be an additional remedy for default. In the event of a conversion to Chapter 7, all property of the estate vested in the Reorganized Debtor pursuant to the Plan shall automatically revest in the Chapter 7 Estate upon conversion without need of a separate order.

ARTICLE XIII: RETENTION OF JURISDICTION

13.01   Jurisdiction over Matters.

Until the Chapter 11 Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan in accordance with the Bankruptcy Code, to assure performance by the Reorganized Debtor of its obligations under the Plan, to enforce and interpret the terms and conditions of the Plan and related documents, to hear and determine any contested matters arising on account of transactions contemplated by the Plan or relating to the period of administration of the Chapter 11 Case, to hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331 or 503(b) of the Bankruptcy Code, to hear and resolve disputes concerning any reserves under the Plan or the administration thereof, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

ARTICLE XIV: MISCELLANEOUS

14.01   Request for Relief under 11 U.S.C. § 1129(b) - "Cramdown".

In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby, request the Court to confirm the Plan in accordance with 11 U.S.C. § 1129(b).

14.02   Entire Agreement.

The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtor, its Creditors and Equity Interest holders relating to the subject matter hereof and supersede all prior discussions and documents.

14.03   Payments.

(a)     <u>Delivery</u>.

Any payments or Distributions pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Debtor with a change of address. All Claims for undeliverable distributions shall be made within 180 days of the Reorganized Debtor attempting to make a Distribution to the applicable holder. After such 180-day period, all unclaimed property shall remain the property of the Reorganized Debtor and the claim of any holder with respect to such unclaimed property shall be discharged and forever barred.

(b)     <u>Voided Checks</u>.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Debtor's attorney Antonio Martinez, Jr. at Antonio Martinez, Jr., 515 W. Nolana Ave., Suite B, McAllen, Texas 78504 and by email to martinez.tony.jr@gmail.com by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

(c)     <u>Minimum Distributions</u>.

The Reorganized Debtor shall not be required to make Distributions to any holder of an Allowed General Unsecured Claim if such Distribution is less than $50.00.

14.04   <u>Governing Law</u>.

Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

14.05   <u>Non-Severability of Plan Provisions</u>. If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired

or invalidated by such holding, alteration, or interpretation, as applicable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or Reorganized Debtor (as the case may be), and (3) nonseverable and mutually dependent.

14.06. <u>Consent to Jurisdiction</u>. Upon default under the Plan and the Reorganized Debtor or any successor thereto, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

Dated: April 9, 2026
        SKYLINE EMS, INC.

By:  */s/ Maria I. Rodriguez*
     Maria I. Rodriguez
     **Chief Executive Officer**
     **Representative for Debtor**

DRAFTED and APPROVED:

*/s/ Antonio Martinez, Jr.*
Antonio Martinez, Jr.
State Bar No. 24007607
515 W. Nolana Ave., Suite B
McAllen, Texas 78504
(956) 789-5393
martinez.tony.jr@gmail.com

***Counsel for Skyline EMS, Inc.***